J-S17016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.G., MOTHER | : | No. 574 EDA 2024 |

Appeal from the Order Entered January 25, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001757-2012

| | | |
|---|---|---|
| IN THE INTEREST OF: A.R.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.G., MOTHER | : | No. 575 EDA 2024 |

Appeal from the Order Entered January 26, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000174-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: J.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.G., MOTHER | : | No. 576 EDA 2024 |

Appeal from the Order Entered January 25, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000589-2020

IN THE INTEREST OF: J.P., A MINOR : IN THE SUPERIOR COURT OF
                                          : PENNSYLVANIA
                                          :
                                          :
                                          :
APPEAL OF: J.G., MOTHER : No. 577 EDA 2024

Appeal from the Order Entered January 26, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000175-2023

IN THE INTEREST OF: J.P., A MINOR : IN THE SUPERIOR COURT OF
                                          : PENNSYLVANIA
APPEAL OF: J.G., MOTHER : No. 578 EDA 2024

Appeal from the Order Entered January 25, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000590-2020

IN THE INTEREST OF: J.P., A MINOR : IN THE SUPERIOR COURT OF
                                          : PENNSYLVANIA
APPEAL OF: J.G., MOTHER : No. 579 EDA 2024

Appeal from the Order Entered January 26, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000176-2023

BEFORE: BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY KING, J.:                                        **FILED JUNE 18, 2024**

Appellant, J.G. ("Mother"), appeals from the orders entered in the Philadelphia County Court of Common Pleas, denying her petitions to appeal *nunc pro tunc* from the orders involuntarily terminating her parental rights and changing the permanency goals to adoption regarding her minor children, A.G. (born in January 2011), Jo.P. (born in May 2014), and Ja.P. (born in May 2014)[1] ("Children").  We vacate and remand for further proceedings.

The underlying facts leading to the goal change/termination orders are not germane to this appeal.  In its opinion, the trial court set forth the relevant procedural history of this case as follows.

> On November 2, 2023, the trial court held a hearing on the Petitions to Terminate the Parental Rights of [Mother to Children].  The trial court found clear and convincing evidence to involuntarily terminate [Mother's] parental rights and to change the goal of the Children to adoption pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and 23 Pa.C.S.A. § 2511(b).[2]  Mother failed to appear for the hearing but was represented by counsel for its entirety.  On [December 14, 2023 and January 25, 2024], counsel for Mother filed a "Petition to Leave to File Appeal *Nunc Pro Tunc*."[3]  This court issued…Order[s] denying the Petition [on January 25, 2024].  The Notices of Appeal alleging that

---

[1] Jo.P. and Ja.P. are twins.

[2] The court issued three orders concerning each child on November 2, 2023: an order terminating Mother's parental rights; a permanency review order; and an amended permanency review order clarifying that the court was changing the goal for each child to adoption.

[3] Mother filed separate petitions seeking *nunc pro tunc* relief relating to the goal change orders for each child on December 14, 2023, and separate petitions seeking *nunc pro tunc* relief relating to the termination orders for each child on January 25, 2024.  The petitions for *nunc pro tunc* relief related to the goal change and termination orders are substantively the same.

this court improperly denied Mother's "Petition to [A]ppeal *Nunc Pro Tunc*" were filed by Mother on February 21, 2024.

(Trial Court Opinion, filed March 22, 2024, at 1).[4]

Mother raises one issue for our review:

Whether the trial court erred and abused its discretion by denying a petition for leave to file appeal *nunc pro tunc*?

(Mother's Brief at 4).

Mother argues that she did not live at the address listed on the Parent Locator Service report ("PLS"), where notice of the termination/goal change orders was sent. Mother avers that she broke her hand in 2023 and was recuperating at a different residence. Mother contends that she only heard about the termination/goal change orders after speaking to the twins' father,[5] after which Mother contacted her attorney. Mother emphasizes that she was not present at the termination/goal change hearing. Mother maintains that she did not even receive the termination/goal change petitions. Mother highlights testimony at the termination hearing from case manager Silvine Belzince, who stated that Mother had told her that Mother did not have a place

_____

[4] Mother filed separate notices of appeal from each of the court's orders denying her petitions seeking *nunc pro tunc* relief. This Court consolidated Mother's appeals *sua sponte*. Mother also filed concise statements of errors complained of on appeal, along with her notices of appeal, per Pa.R.A.P. 1925(a)(2)(i).

[5] A.G. has a different father than the twins. On November 2, 2023, the court also entered goal change/termination orders concerning the twins' father, and he has appeals pending before this Court docketed at 3017 EDA 2023, 3018 EDA 2024, 3019 EDA 2023, and 3020 EDA 2023.

to live. Mother claims that her failure to file timely notices of appeal from the termination/goal change orders was non-negligent. Mother insists the court erred by declining to hold a hearing to receive evidence and testimony as to the averments made in Mother's petitions seeking *nunc pro tunc* relief.

Mother further emphasizes that she contacted her attorney two days after the appeal deadline. Counsel filed petitions seeking *nunc pro tunc* relief shortly thereafter. Mother highlights that the twins' father timely filed notices of appeal on November 30, 2023, from the termination orders affecting his children, so the transcripts were already being ordered and the trial court was already preparing an opinion concerning those appeals. Mother insists there is no prejudice to the Department of Human Services ("DHS") in allowing Mother to appeal *nunc pro tunc*. Mother concludes the court erred by denying her petitions to appeal *nunc pro tunc* from the termination/goal change orders concerning Children, and this Court must grant relief. For the following reasons, we agree relief is due.

"The question of timeliness of an appeal is jurisdictional in nature. Failure to file a timely notice of appeal divests this Court of jurisdiction." ***In re J.M.P.***, 863 A.2d 17, 19 (Pa.Super. 2004), *appeal denied*, 583 Pa. 690, 878 A.2d 864 (2005) (internal citation omitted). "The 30-day period [under Pa.R.A.P. 903(a)] must be construed strictly. This Court has no jurisdiction to excuse a failure to file a timely notice [of appeal]." ***In re Greist***, 636 A.2d 193, 195 (Pa.Super. 1994) (internal citation omitted).

> Allowance of an appeal *nunc pro tunc* lies at the sound discretion of the Trial Judge. More is required before such an appeal will be permitted than the mere hardship imposed upon the appellant if the request is denied. As a general matter, a Trial Court may grant an appeal *nunc pro tunc* when a delay in filing [an appeal] is caused by extraordinary circumstances involving fraud or some breakdown in the court's operation through a default of its officers. Where an appeal is not timely because of non-negligent circumstances, either as they relate to appellant or [her] counsel, and the appeal is filed within a short time after the appellant or [her] counsel learns of and has an opportunity to address the untimeliness, and the time period which elapses is of very short duration, and appellee is not prejudiced by the delay, the court may allow an appeal *nunc pro tunc*.

*In re Adoption of W.R.*, 823 A.2d 1013, 1015 (Pa.Super. 2003) (internal citation omitted).

Significantly, we further observe that our Rules of Appellate Procedure designate the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by [Pa.R.C.P. 236(b)]." Pa.R.A.P. 108(b).

> Our Supreme Court has held that "an order is not appealable until it is entered on the docket **with the required notation that appropriate notice has been given**." *Frazier v. City of Philadelphia*, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999) (emphasis added). Where there is no indication on the docket that Rule 236(b) notice has been given, then the appeal period has not started to run. *Id.* at 621-22, 735 A.2d at 115. Our Supreme Court has expressly held that this is a bright-line rule, to be interpreted strictly. That the appealing party did indeed receive notice does not alter the rule that the 30–day appeal period is not triggered until the clerk makes a notation on the docket that notice of entry of the order has been given. *Id.*

*In re L.M.*, 923 A.2d 505, 509 (Pa.Super. 2007) (emphasis in original).

"Because the appellate clock starts running once the prothonotary records the giving of the Rule 236 notice in the docket, appellate courts need to have a clear, verifiable way to determine that Rule 236 notice was indeed provided." ***Smithson v. Columbia Gas of PA/NiSource***, 264 A.3d 755, 760 (Pa.Super. 2021). This Court has explained:

> A prothonotary should make a notation that specifically states, for example, "Rule 236 notice provided on" followed by the date the notice was given, in order to comply with the notification mandate and procedural requirement of Rule 236. **Anything short of such a notation constitutes a failure by the prothonotary to comply with the notification mandate and procedural requirement of Rule 236, and is a breakdown in court operations.**

***Carr v. Michuck***, 234 A.3d 797, 805-06 (Pa.Super. 2020) (emphasis added). ***See also*** Pa.O.C.R. 4.6(a) (requiring Orphans' Court clerk to give immediate notice of order terminating parental rights to counsel for parties or to unrepresented parties directly; mandating that clerk note in docket date when it provided such notice); ***In re Adoption of K.A.F.***, 273 A.3d 1036 (Pa.Super. filed Feb. 8, 2022) (unpublished memorandum)[6] (holding that Pa.O.C.R. 4.6(b) is akin to Pa.R.C.P. 236(b) such that order pursuant to Orphans' Court jurisdiction is entered, for purposes of Rule 903(a), once court official complies with Rule 4.6). "[A] prothonotary's failure to comply with Rule 236, governing notice, means that the filing period for a responsive motion was never

---

[6] ***See*** Pa.R.A.P. 126(b) (stating that we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

triggered, and, therefore, a subsequent motion and order denying that motion are legal nullities." ***Bank of New York Mellon Trust Company, N.A. as Trustee for First Alliance Mortgage Loan Trust 1997-3, Mortgage Loan Asset Backed Certificates, Series 1997-3 v. Limberis***, 301 A.3d 902, 2023 WL 3966560 at *2 (Pa.Super. filed June 13, 2023) (unpublished memorandum).

Instantly, Mother's petition seeking *nunc pro tunc* relief alleged that she contacted her attorney on December 6, 2023, after more than 30 days had elapsed from the court's November 2, 2023 orders, and she asked counsel to file a notice of appeal on her behalf. During that conversation, counsel informed Mother that following the termination hearing, a letter advising Mother of her appellate rights was sent to the address listed on the PLS. Mother denied receipt of that letter. Mother informed counsel at that time that she was residing at 4233 Bennington Street in Philadelphia.[7] Mother told counsel that she had never received the termination/goal change petition, and only learned of the order terminating her parental rights via Father. Mother indicated that she broke her hand in the fall of 2023 and had been recuperating at the Bennington Street address. (***See*** Petition to Leave to File Appeal *Nunc Pro Tunc*, filed 12/14/23, at 2).

_____

[7] This address is not the address listed in the PLS and is not the same as an alternate address at which DHS had attempted to serve Mother with the termination petition and notice regarding the termination hearing.

The trial court denied *nunc pro tunc* relief, reasoning:

Mother's Petition to Leave to File Appeal *Nunc Pro Tunc* alleges that Mother was unable to appeal this court's Order terminating her parental rights [and changing the permanency goals] within the prescribed thirty-day period as she was unaware that her parental rights were terminated. **This court found that [DHS] properly served the Petition to Terminate Parental Rights to Mother**. (N.T. November 2, 2023, Page 8).

Mother has been in frequent contact with her assigned Community Umbrella Agency (CUA) Case Manager, Silvine Belzince, and was well-aware of the ongoing dependency proceedings concerning the children. Ms. Belzince testified that she had spoken to Mother just two weeks prior to the hearing at which her parental rights were terminated. She stated that Mother contacts her approximately two times per month and it is usually regarding visitation. ([*Id.*], Page 15 to 16).

Ms. Belzince testified that Mother has a history of failing to appear for scheduled events concerning these dependency matters. Specifically, she informed the court that there have been multiple meetings regarding the establishment and modification of Mother's single case plan (SCP) objectives. SCP objectives are goals that a parent must progress toward to achieve reunification with her children. Ms. Belzince testified that Mother was notified of these scheduled SCP meetings and failed to attend a single one. ([*Id.*], Page 16). Additionally, Mother had been ordered by the court to attend the Clinical Evaluation Unit (CEU) for an assessment and that Mother failed to appear for each of the appointments. ([*Id.*], Page 17). Ms. Belzince also noted that Mother had not attended a single visit with the children for the eight months preceding the termination of her parental rights. ([*Id.*], Page 22).

Allowance of an appeal *nunc pro tunc* lies at the sound discretion of the trial court. More is required before such an appeal will be permitted than the mere hardship imposed upon the appellant if the request is denied. …

**This court believes that Mother was served notice of**

**these proceedings in accordance with the procedural rules governing notice and due process**. Mother was fully aware of the ongoing dependency proceedings concerning the children and failed to appear at the hearing concerning the termination of her parental rights. Ms. Belzince's testimony that Mother has consistently been absent from important events and appointments directly related to achieving reunification with the children despite having actual notice of them was considered by this court when deciding whether to grant Mother's Petition to Leave to Appeal *Nunc Pro Tunc*. Denying Mother's Petition was not something this court did mechanically and without genuine thought and consideration. Mother's failure to timely notify her counsel to file an appeal is yet another example of her not according these proceedings the significant weight that they merit. Accordingly, this court exercised its discretion and denied Mother's petition.

(Trial Court Opinion at 2-4) (emphasis added).

Notwithstanding the court's analysis that DHS properly served Mother with the petitions seeking to change the goal to adoption and terminate her parental rights to Children, our review of the docket entries reveals a breakdown in the operations of the court concerning entry of the termination and goal changes orders. The docket entries show that the court entered three orders concerning each child on November 2, 2023: the termination order, a permanency review order, and an amended permanency review order that clarified the goal change to adoption. However, none of the docket entries concerning those orders expressly states the words, "Rule 236 notice provided." ***See Carr, supra***. Complicating matters further, the purported date of service listed in the dockets for the amended permanency review orders differs for Children. The dependency docket entries pertaining to A.G.

- 10 -

and Jo.P. suggest that notice of the amended permanency review order was sent to Mother's counsel on November 8, 2023. However, the dependency docket concerning Ja.P. (docketed in this Court at 578 EDA 2024) indicates that the amended order was not sent to Mother's counsel until December 1, 2023, which would have rendered Mother's December 14, 2023 petition seeking *nunc pro tunc* relief timely filed within 30 days of that date. Under these circumstances, and mindful of the significant rights at stake, we conclude that a breakdown in the operations of the court occurred such that Mother's appeal period has not yet been triggered, and the court's orders denying Mother *nunc pro tunc* relief were legal nullities. **See In re L.M., supra**. **See also Bank of New York, supra**.

Therefore, we vacate the orders denying Mother's petitions for *nunc pro tunc* relief and remand for further proceedings. Upon remand, we instruct Mother's counsel to update Mother's current address with the court. We further direct the clerk of courts to re-enter the termination/goal change orders with appropriate notice per Rule 236 upon remittal of the record, after which Mother may file notices of appeal and Rule 1925(a)(2)(i) statements within 30 days. **See Carr, supra** (providing similar instructions upon remand). Thereafter, the court shall issue a Rule 1925(a) opinion responding to all properly preserved issues raised in Mother's concise statements.

Orders vacated. Case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/18/2024